# **<u>EXHIBIT A</u>**

**THE DANN LAW FIRM, PC**
Javier L. Merino, Esq. (NJ Attorney ID No. 078112014)
Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
1520 U. S. Highway 130, Suite 101
North Brunswick, NJ 08902
(201) 355-3440 – TELEPHONE
(216) 373-0536 – FAX
*Attorneys for Plaintiff Lance Brown and others similarly situated*

| | |
|---|---|
| **LANCE BROWN**, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**M&T BANK CORPORATION**,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: UNION COUNTY<br><br>CIVIL ACTION<br><br>DOCKET NO. UNION-L-<br><br>**CLASS ACTION COMPLAINT<br>AND JURY DEMAND** |

## NATURE OF THE CASE

1.      Plaintiff Lance Brown ("Brown") brings claims on behalf of himself and those similarly situated under the New Jersey Uniform Commercial Code N.J.S.A. 12A:1-101, *et seq.* (NJUCC), Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* (CFA), and Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-14, *et seq.* (TCCWNA), against Defendant M&T Bank Corporation ("M&T") in connection with its unlawful scheme related to the financing and disposition of repossessed collateral vehicles.

2.      M&T repossessed and disposed of the collateral vehicles of Brown and others similarly situated in a manner that was not commercially reasonable as required by New Jersey law. M&T's unlawful practices included, but were not limited to, providing notices of intent to sell repossessed collateral vehicles which violate the rights of New Jersey consumers and

charging fees prohibited by New Jersey law.

3.      As a result of M&T's deceptive and unconscionable business practices, Brown and others suffered ascertainable losses including, but not limited to, improper fees, losses related to disposing of repossessed collateral vehicles in a manner that was not commercially reasonable in every respect, and the amounts of the alleged debts demanded by M&T.

## VENUE

4.      Venue is proper in Union County as it is the location of Brown's residence and where a number of the complained of actions took place.

## STATEMENT OF FACTS

5.      Brown resides in Westfield, New Jersey.

6.      M&T is a bank holding company with approximately one hundred branches located in New Jersey.

7.      M&T has a headquarters located in Buffalo, New York.

8.      M&T is a financial institution that provides financing for consumer home, automobile, and vehicle loans.

9.      M&T utilizes the services of financing agencies which connect consumers with financial agencies to obtain loans.

10.     Chesapeake Financial Services, Inc. ("Chesapeake Financial") is a financing agency that connects consumers with financial institutions to obtain loans, including M&T, with a specialization for boat and recreational vehicle loans.

11.     On or around July 24, 2015, Brown sought to purchase a 2003 Rinkler Captiva Cuddy motorboat, Load Rite Trailer, and MerCruiser brand motor for personal and family use.

12.     Brown applied online for financing through Chesapeake Financial.

13.     Chesapeake Financial communicated to M&T information regarding Brown's credit application and his purchase for M&T to consider providing Brown with a direct loan.

14.     After Brown applied to Chesapeake Financial for a loan, M&T, or its agent, created a document titled "Marine Installment Loan Note and Security Agreement", which contains the terms of the loan between M&T and Brown ("M&T Loan Note"). A copy of the M&T Loan Note is attached as **<u>Exhibit 1</u>**.

15.     The M&T Loan Note mentions two items of property, the Rinkler motorboat and MerCruiser motor, which serve as security for the loan. *See* <u>Exhibit 1</u>.

16.     The M&T Loan Note includes the following terms:

    a.  "Cash Price" of $16,200.00;
    b.  "Cash Downpayment" of $3,400.00;
    c.  "Amount Financed" of $13,495.00;
    d.  "Finance Charge" of $8,121.80;
    e.  "Annual Percentage Rate" of 10.24%;
    f.  120 payments of $180.14; and,
    g.  "Total of Payments" of $21,616.80.

*See* <u>Exhibit 1</u>.

17.     The M&T Loan Note identifies the loan "Source" as Chesapeake Financial. *See* <u>Exhibit 1</u>.

18.     The M&T Loan Note indicates that $495.00 of the $13,495.00 identified as the "Amount Financed" was an "Amount paid to others on my behalf". *See* <u>Exhibit 1</u>.

19.     The M&T Loan Note indicates that the $495.00 of the $13,495.00 identified as the "Amount Financed" was paid to Chesapeake Financial. *See* <u>Exhibit 1</u>.

20.     Brown signed the M&T Loan Note, which was then accepted by M&T.

21.    The M&T Loan Note was fully executed by Brown and M&T.

22.    Following M&T entering the loan agreement with Brown, M&T paid Chesapeake Financial $495.00.

23.    M&T's payment to Chesapeake Financial in connection to Brown's loan was a loan fee, finder's fee, or similar charge charged in connection with the extension of credit to Brown.

24.    M&T's payment to Chesapeake Financial was made pursuant to an agreement between M&T and Chesapeake Financial.

25.    M&T's payment to Chesapeake Financial was made pursuant to an agreement between M&T and Chesapeake Financial whereby Chesapeake Financial provides M&T with consumer loan candidates and M&T provides Chesapeake Financial with compensation when it enters a loan agreement with such a candidate.

26.    Following M&T entering the loan agreement with Brown, M&T, or its agents, arranged for a lien to be placed on the title of Brown's motorboat.

27.    Brown received a loan check in the amount of $12,800.00 after the loan documents and transaction was completed.

28.    Brown paid the seller a down payment in the amount of $3,400.00.

29.    Brown paid the seller of the motorboat the full check amount financed of $12,800.00.

30.    Brown purchased the motorboat trailer from the seller with his own money and not as part of any loan.

31.    Brown took possession of the motorboat and trailer on or around August 3, 2015.

32.     Brown did not receive a deficiency notice prior to M&T's repossession of the motorboat.

33.     On or around May 5, 2019, the motorboat was repossessed by Commercial Services Corporation ("CSC"), a repossession company located at 361 Grove St., Newark, New Jersey.

34.     The repossession agent took the motorboat and trailer and did not return the trailer until threatened with arrest.

35.     When Brown discovered that the trailer was taken, Brown reported it stolen to the Westfield Police Department.

36.     Brown showed a Westfield Police Department officer the title for trailer and explained that item was not part of M&T's security interest.

37.     The officer ordered the repossession agent to return the trailer or an arrest warrant would be issued.

38.     M&T incorrectly informed the repossession agent that the trailer was included in M&T's lien.

39.     The repossession agent eventually returned the trailer to Brown.

40.     At the time of the repossession, Brown's personal property in the motorboat included:

        a.  Canvas tarp to cover the motorboat;
        b.  Life preserver jackets;
        c.  Rafts;
        d.  Tools;
        e.  New motorboat engine;
        f.  Extra speaker;
        g.  Amplifier; and
        h.  Additional personal items.

UNN-L-001344-23   04/26/2023 4:07:00 PM   Pg 6 of 23   Trans ID: LCV20231378616
Case 2:23-cv-03026-MCA-ESK   Document 1-1   Filed 06/01/23   Page 7 of 54 PageID: 18

41.     The day after the repossession, on or about May 6, 2019, M&T sent Brown a letter (the "Demand Letter"). A copy of the Demand Letter is attached as **Exhibit 2**.

42.     The Demand Letter demanded Brown pay $11,070.44, which it identified as the "balance in full" of his "contractual obligation to M&T". *See* Exhibit 2.

43.     When M&T sent Brown the Demand Letter, he did not owe M&T $11,070.44.

44.     The next day, on or about May 7, 2019, M&T sent Brown a Notice of Repossession and Right to Redeem. A copy of the Notice of Repossession and Right to Redeem is attached as **Exhibit 3**.

45.     The Notice of Repossession and Right to Redeem states that M&T had accelerated all amounts due under the contract and they "are now due and owing". *See* Exhibit 3.

46.     The Notice of Repossession and Right to Redeem identifies the "TOTAL PAST DUE AMOUNT" owed as $2,480.59 comprised of $1,080.84 identified as "Past Due Payments", $109.75 identified as "Late Charges", $1,170.00 identified as "Repossession Fees", and $120.00 identified as "Storage Fees" ($40 per day). *See* Exhibit 3.

47.     The Notice of Repossession and Right to Redeem states that if Brown wished to redeem his collateral within fifteen days of May 7, 2019, he "may do so by delivering the total past due amount" consisting of the $2,480.59 total past due amount plus daily storage fees. The Notice of Repossession and Right to Redeem also stated that Brown had the right to redeem his collateral and reinstate the contract by paying the total past due amount identified as $2,480.59. *See* Exhibit 3.

Page **6** of **23**

48.    The Notice of Repossession and Right to Redeem states "[w]e will sell the collateral at public sale. A sale could include a lease or license. The sale will be held as follows: Date: [Blank] Time: [Blank] Place: [Blank]."

49.    The Notice of Repossession and Right to Redeem simultaneously states "[w]e will sell the collateral at private sale. A sale could include a lease or license. The sale will be held as follows: Date: June 18, 2019 Time: 9:00:00 AM Place: Manheim Keystone PA; 488 Firehouse Rd. Grantville, PA 17028.

50.    M&T's notice of repossession did not comply with New Jersey notice requirements.

51.    Brown went to retrieve his personal property on or around two weeks after the motorboat was repossessed.

52.    The repossession agent informed Brown that the motorboat, along with the personal property inside the motorboat, had been sent to Pennsylvania to be sold.

53.    The physical act of repossession was not done in a commercially reasonable manner, because the repossession agent could not remove the motorboat from Brown's driveway without damaging the engine, which was winterized and 1-2 inches above ground.

54.    The repossession agent damaged Brown's driveway as a result of the repossession.

55.    Brown made improvements to the motorboat after the motorboat was financed by M&T. Specifically, Brown reconditioned the motorboat by cleaning, painting, and winterizing the motorboat. Brown expended approximately $2,324.00 of his own personal money to make said reconditioning improvements to the motorboat.

56.     Brown also added a new engine to the motorboat, which he paid for with his own financial resources. A copy of an invoice from NJ Powerboat, LLC is attached as **Exhibit 4**.

57.     Brown spent a total of $10,700.00 on the new engine and installation into the motorboat. *See* Exhibit 4.

58.     The loan made by M&T in 2015 was based on the wholesale amount of the motorboat.

59.     The motorboat increased in value since M&T financed the transaction due to said improvements.

60.     The repossessed motorboat was being advertised via Facebook.com for $14,900.00, more than the amount financed by M&T. A copy of the advertisement from Facebook.com is attached as **Exhibit 5**.

61.     The advertisement for the motorboat attested to the motorboat's new engine, newly painted exterior, and detailing. *See* Exhibit 5.

62.     The motorboat was also advertised on M&T's website for collateral vehicles being sold by M&T.

63.     The advertisement of the motorboat on Facebook.com and M&T's website was not disclosed in any of the notifications provided to Brown.

64.     Through correspondence dated May 13, 2020, M&T through a third-party collection agency, advised Brown that he owed an "account balance" of $10,799.64. A copy of the collection notice is attached as **Exhibit 6**.

65.     Brown did not receive notice of sale of the motorboat, and as of December 20, 2021, does not know if the motorboat has been successfully sold. However, it appears that M&T

may have sold the motorboat, as the May 13, 2020 collection notice demanded an account balance of $10,799.74, meanwhile M&T's earlier collection notices demanded in excess of $15,000.00.

66.   Brown suffered an ascertainable loss as a result of M&T's business practices including, but not limited to:

a.   The value of the motorboat at the time it was repossessed;

b.   The amount M&T demanded and reported as a debt on Brown's credit report;

c.   The difference between what the motorboat should have been sold for and what it was actually sold for;

d.   The value of personal property inside the motorboat at the time of repossession which was not returned;

e.   The damage to Brown's physical property; and,

f.   The amount of fees charged to Brown that he did not owe.

## CLASS ACTION ALLEGATIONS

67.   This action is brought and may properly proceed as a class action, pursuant to the provisions of R. 4:32 for a class pursuant to R. 4:32-1(b)(2) and/or (b)(3). Brown brings this action on behalf of himself and others similarly situated. The proposed class is defined as follows:

All consumer obligors whose collateral vehicle was repossessed at any time on or after the day four years prior to the date the initial Complaint was filed, where the collateral vehicle was subject to a repossession effort collected by or on behalf of M&T where M&T: (a) disposed of the collateral vehicle in a manner the same or similar to the manner that M&T attempted to dispose of Brown's motorboat or (b) sent them a deficiency demand letter the same or similar to that sent to Brown.

68.     The Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable. The precise size of the proposed class and the identity of its members will be readily ascertainable from M&T's business records.

69.     There are questions of law and fact common to the members of the Class. These common questions include but are not limited to:

a.  Whether M&T sent Brown and those similarly situated a notification before disposition of collateral that complied with the requirements of N.J.S.A. 12A:9-613 and N.J.S.A. 12A:9-614;

b.  Whether M&T sent Brown and those similarly situated a notice subsequent to the disposition of a repossessed collateral vehicle that complied with the requirements of N.J.S.A. 12A:9-616;

c.  Whether the violations of N.J.S.A. 12A:9-616 was part of a pattern, or consistent with a practice of noncompliance with that statute;

d.  Whether the violations of N.J.S.A. 12A:9-614 and/or N.J.S.A. 12A:9-616 constitute violations of the TCCWNA;

e.  Whether M&T charged Brown and those similarly situated for amounts not owed;

f.  Whether M&T sold the collateral vehicles of Brown and those similarly situated in a manner that was commercially reasonable in every respect;

g.  Whether M&T's conduct described herein violated the NJUCC, CFA, and/or the TCCWNA; and

h.  Whether M&T's practice of placing an advertisement in a newspaper stating that members of the Class had their collateral vehicle repossessed is permitted by contract or constitutes an unconscionable commercial practice when a fee is charged for that advertisement.

70.     Proof of a common set of facts will establish liability and the right of each Class member to recover.

71.     The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual Class members.

72.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

73.     While the economic damages suffered by the individual Class members are significant, the amount may be modest compared to the expense and burden of individual litigation.

74.     A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort, and expense.

75.     Brown's claims and defenses are typical of the claims and defenses of the members of the Class, since all such claims and defenses arise out of common practices and standardized form documents.

76.     Brown does not have interests antagonistic to those of the Class.

77.     The Class, of which Brown is a member, is ascertainable.

78.     Brown will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in the prosecution of consumer class actions.

79.     M&T has acted or refused to act on grounds generally applicable to Brown and those similarly situated, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

80.     Brown does not anticipate any difficulty in the management of this litigation.

## CLASS ACTION ALLEGATIONS

## COUNT ONE
## VIOLATIONS OF THE UNIFORM COMMERCIAL CODE

81.     Brown, on behalf of himself and all others similarly situated, restates and incorporates all of his statements and allegations contained in paragraphs 1 through 80, in their entirety, as if fully rewritten herein.

82.     The collateral vehicles purchased by Brown and those similarly situated are "consumer goods" as defined by the NJUCC at N.J.S.A. 12A:9-102(a)(23).

83.     The transactions whereby Brown and those similarly situated purchased the collateral vehicles from Defendant are "consumer-goods transactions" as defined by the UCC at N.J.S.A. 12A:9-102(a)(24).

84.     Brown and those similarly situated are consumer obligors under N.J.S.A. 12A:9-102(a)(25).

85.     M&T violated N.J.S.A. 12A:9-610 by failing to dispose of the collateral vehicles of Brown and others similarly situated in a manner that was commercially reasonable in every respect.

86.     Among other reasons, M&T's conduct was commercially unreasonable in that:

a.  M&T failed to conduct an investigation, study, survey, or other inquiry to determine what type of sale would likely generate the highest price for collateral vehicles;

b.  M&T failed to provide Brown and others similarly situated with notification before disposition of collateral that contained the information required by N.J.S.A. 12A:9-614(1)(A), which mandates that a notice of disposition must provide the information specified in 12A:9-613(1). Meanwhile, M&T failed to comply with 12A:9-613(1)(D) in that M&T failed to state that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting. Thus, M&T violated 12A:9-613(1)(D), which in turn, is a per se violation  12A:9-614(1)(A);

c.  M&T failed to advertise the sale of the collateral vehicles of Brown and others similarly situated in a manner that was commercially reasonable in every respect;

    d.  M&T represented to Brown and others similarly situated that a public auction would be held in an attempt to dispose of their collateral vehicles but failed to hold a commercially reasonable public auction;

    e.  M&T charged Brown and others similarly situated one or more fees not part of M&T's reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing of its collateral vehicles; and,

    f.  M&T obtained sales prices for the disposition of collateral vehicles that were unreasonably low or failed to credit the proceeds of the sale to the balance of the loans of Brown and others similarly situated.

87.    M&T violated N.J.S.A. 12A:9-613(1) its transactions with Brown and those similarly situated by failing to adequately state:

    a.  The intended method of disposition. First, M&T stated the collateral was being sold at public auction, yet failed to identify either the date, time, or place of the auction. Then, M&T stated the collateral was being sold privately, but instead of identifying a date "after" it would be sold, it improperly stated a specific date the collateral would be sold.;

    b.  That the consumer obligor was entitled to an accounting of the unpaid indebtedness. Here, the notice entirely failed to advise Brown of his right to the accounting; and,

    c.  The charge, if any, for such an accounting; and state the time and place of a public disposition or the time after which any other disposition is to be made.

88.    M&T violated N.J.S.A. 12A:9-614 its transactions with Brown and those similarly situated by failing to provide the information required by N.J.S.A. 12A:9-613(1) and to adequately describe the liability for a deficiency .Specifically, the notices failed to state "[t]he money that we get from the sale (after paying our costs) will reduce the amount you owe."[1] Furthermore, the notices: (1) fail to "state the method of intended disposition", as the notice states *both* a public and private disposition; (2) fail to "state[] that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting"; and (3)

---

[1] *See* N.J.S.A. 12A:9-614(3)

fail to states the time and place of a public disposition…" *See* N.J.S.A. 12A:9-613(1)(C), (D), (E).

89.    M&T violated N.J.S.A. 12A:9-623 in its transactions with Brown and those similarly situated by failing to allow Brown and others similarly situated the right to redeem their collateral vehicles by fulfilling all obligations secured by the collateral and paying the reasonable expenses and attorneys' fees described in 12A:9-615(a)(1).

90.    M&T violated N.J.S.A. 12A:9-623 its transactions with Brown and those similarly situated by failing to allow Brown and others similarly situated the right to redeem their collateral vehicles before Defendant disposed of their collateral vehicle. N.J.S.A. 12A:9-623 provides the consumer the right to redeem at any time before the repossessed vehicle is sold by the creditor. The notice does not state this and implies that the right to obtain the vehicle expires in fifteen days.

91.    M&T breached its duty to Brown and those similarly situated as required by N.J.S.A. 12A:9-102(a)(43).

92.    M&T violated N.J.S.A. 12A:9-615 by charging more than the reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing of the collateral vehicles when calculating the alleged deficiency. For example, M&T's $1,170.00 "Repossession Fee" is patently unreasonable. Furthermore, it is unreasonable for M&T to incur a $200.00 "Sale preparation expense" within a day of repossessing the vehicle, and it is unreasonable for M&T to then incur $2,324.30 in sale preparation expenses as a consequence of its failure to sell the collateral in a commercially reasonable manner.

93.     M&T violated N.J.S.A. 12A:9-627 by failing to dispose of the collateral vehicles of Brown and others similarly situated in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

94.     N.J.S.A. 12A:9-627 provides the following guidance on a commercially reasonable sale:

> (b) Dispositions that are commercially reasonable. A disposition of collateral is made in a commercially reasonable manner if the disposition is made:
>
> > (1) in the usual manner on any recognized market;
> >
> > (2) at the price current in any recognized market at the time of the disposition; or
> >
> > (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

95.     M&T's decision to repeatedly attempt to sell the collateral via a private sale, instead of at public auction, was not commercially reasonable. The fact that as of September 26, 2019, M&T was *still* in possession of the collateral and listing it for private auction on October 15, 2019, approximately *one hundred sixty-three (163) days* after the collateral was originally repossessed, demonstrates M&T's actions were not commercially reasonable.

96.     M&T violated the rights of Brown and those similarly situated under the NJUCC.

97.     M&T breached its duty of "good faith" to Brown and those similarly situated as required by the UCC.

98.     M&T violated N.J.S.A 12A:9-616 by providing Brown and other similarly situated written notices which violated and did not comply with N.J.S.A. 12A:9-616.

99.     The notices that M&T sent Brown and others similarly situated violated N.J.S.A. 12A:9-616(b)(1) by failing to state the amount of the deficiency.

100. M&T violated N.J.S.A. 12A:9-616(a)(1)(B) and N.J.S.A. 12A:9-616(c) by failing to provide an explanation of how M&T calculated the deficiency, with the following information in the following order:

> (1) the aggregate amount of obligations secured by the security interest under which the disposition was made, and, if the amount reflects a rebate of unearned interest or credit service charge, an indication of that fact, calculated as of a specified date:
>
> > (A) if the secured party takes or receives possession of the collateral after default, not more than 35 days before the secured party takes or receives possession; or
> >
> > (B) if the secured party takes or receives possession of the collateral before default or does not take possession of the collateral, not more than 35 days before the disposition;
>
> (2) the amount of proceeds of the disposition;
>
> (3) the aggregate amount of the obligations after deducting the amount of proceeds;
>
> (4) the amount, in the aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing, and disposing of the collateral, and attorney's fees secured by the collateral which are known to the secured party and relate to the current disposition;
>
> (5) the amount, in the aggregate or by type, and types of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled and which are not reflected in the amount in paragraph (1); and
>
> (6) the amount of the surplus or deficiency.

101. M&T violated N.J.S.A. 12A:9-616(a)(1)(C) by failing to state that future debits credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the deficiency, aside from a mention that force placed insurance may

have been reversed.

102.    M&T's failure to comply with N.J.S.A. 12A:9-616(b)(1) was part of a pattern, or

consistent with a practice, or noncompliance.

## COUNT TWO
## VIOLATIONS OF THE CONSUMER FRAUD ACT

103.    Brown, on behalf of himself and all others similarly situated, restates and

incorporates all of his statements and allegations contained in paragraphs 1 through 80, in their

entirety, as if fully rewritten herein.

104.    The CFA prohibits:

> The act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false
> promise, misrepresentation, or the knowing concealment,
> suppression, or omission of any material fact with intent that others
> rely upon such concealment, suppression or omission, in
> connection with the sale or advertisement of any merchandise.

N.J.S.A. 56:8-2.

105.    Brown and those similarly situated are "consumers" pursuant to the CFA.

106.    M&T is a "person" as defined by the CFA because M&T is a partnership,

corporation, company, trust, business entity, or business association. N.J.S.A. § 56:8-1(d).

107.    M&T is subject to the CFA.

108.    M&T's transactions with Brown and those similarly situated are sales of

merchandise subject to the CFA.

109.    M&T engaged in unconscionable commercial practices, deception, fraud, false

promises, false pretenses, and/or misrepresentations, as specified above, in its interactions with

Brown and those similarly situated in violation of the CFA.

110.    Each of the above mentioned violations of the NJUCC constitute a violation of the CFA.

111.    M&T committed an unlawful, deceptive, and unconscionable business practice by misrepresenting the amount of the debt allegedly owed by Brown and those similarly situated.

112.    M&T committed an unlawful, deceptive, and unconscionable business practice by charging Brown and others similarly situated a fee for the notice of public sale advertisements.

113.    M&T committed an unlawful, deceptive, and unconscionable business practice by charging fees not incurred or not allowed by law and/or overcharging customers for fees and charges.

114.    Brown and those similarly situated were damaged and suffered an ascertainable loss as a result of the above violation of the CFA, including but not limited to the $95.00 public auction cost fee.

115.    By failing to dispose of the collateral vehicles of Brown and those similarly situated in a manner that was commercially reasonable in every respect, the sale of the collateral vehicles yielded lower prices than if the collateral vehicles were disposed of in a manner that was commercially reasonable in every respect. That difference constitutes an ascertainable loss.

116.    M&T's demand for an improper debt from Brown and those similarly situated constitutes an ascertainable loss.

117.    The amount of the alleged debt of Brown and others similarly situated that M&T reported to a credit reporting agency constitutes an ascertainable loss.

118.   M&T's actions in applying unlawful fees and/or interest to the loan payments and the collateral vehicle sales of Brown and those similarly situated constitutes an ascertainable loss.

## COUNT THREE

### VIOLATIONS OF THE TRUTH-IN-CONSUMER CONTRACT, WARRANTY, AND NOTICE ACT

119.   Brown, on behalf of himself and all others similarly situated, restates and incorporates all of his statements and allegations contained in paragraphs 1 through 80, in their entirety, as if fully rewritten herein.

120.   M&T violated the TCCWNA.

121.   M&T provided a notice, contract, and/or warranty that violated the clearly established rights of Brown and those similarly situated under New Jersey law.

122.   The notices of repossession, deficiency demands, and notice of public sale advertisements that M&T utilized in its transactions with Brown and those similarly situated violated clearly established rights of consumers as set forth in N.J.S.A. 12A:9-613, N.J.S.A. 12A:9-614, , N.J.S.A. 12A:9-616, N.J.S.A. 12A:9-610, and N.J.S.A. 12A:9-623.

123.   Brown and others similarly situated were aggrieved by these violations in ways that include the following:

   a.   By being deprived of their right to legally required information regarding the right to redeem a repossessed collateral vehicle;

   b.   By being deprived of the right to have a repossessed collateral vehicle be disposed of in a manner that was commercially reasonable in every respect;

   c.   By suffering losses resulting from M&T's failure to dispose of their collateral vehicles in a manner that was commercially reasonable in every respect;

    d.   By having the fact of the repossession advertised in a newspaper and included their names;

    e.   By being charged for notice of public sale advertisements; and

    f.   By being sent deficiency demands that failed to identify the repossession fee and which included a public auction cost fee.

<u>**INDIVIDUAL ALLEGATIONS**</u>

<u>**COUNT FOUR**</u>
**VIOLATIONS OF THE CONSUMER FRAUD ACT**

124.   Brown, on behalf of himself and all others similarly situated, restates and incorporates all of his statements and allegations contained in paragraphs 1 through 80, in their entirety, as if fully rewritten herein.

125.   The CFA prohibits:

    The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise.

N.J.S.A. 56:8-2.

126.   Brown is a "consumer" pursuant to the CFA.

127.   M&T is a "person" as defined by the CFA because M&T is a partnership, corporation, company, trust, business entity, or business association. N.J.S.A. § 56:8-1(d).

128.   M&T is subject to the CFA.

129.   M&T's transactions with Brown is a sale of merchandise subject to the CFA.

130.    M&T engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses, and/or misrepresentations, as specified above, in its interactions with Brown and those similarly situated in violation of the CFA.

131.    M&T committed an unlawful, deceptive, and unconscionable business practice by misrepresenting the amount of the debt allegedly owed by Brown.

132.    M&T violated the CFA by unlawfully converting Brown's personal property, such as items stored inside the motorboat and the motorboat's engine.

133.    M&T violated the CFA by damaging Brown's personal property, his driveway.

**WHEREFORE**, Brown, on behalf of himself and those similarly situated, respectfully prays for relief as follows:

A.    For an order certifying this matter as a class action providing notice to the members of the Class, and appointing Brown as the Class Representative and Brown's attorneys as Class Counsel;

B.    For a declaratory judgment that M&T violated the NJUCC, CFA, and TCCWNA;

C.    For injunctive relief prohibiting M&T from carrying out future violations of the NJUCC, CFA, and TCCWNA that are similar to the violations alleged herein;

D.    For injunctive relief prohibiting M&T, or its successors in interest, from obtaining or attempting to obtain additional deficiency judgments from members of the Class;

E.    For an accounting of all amounts charged to Brown and the members of the class related to the application of their payments and any fees charged;

F.    For an accounting of all amounts obtained from the sale of the collateral vehicles of Brown and the members of the class;

G.    For actual damages;

H.    For compensatory damages;

I.    For a refund of all monies collect via an unlawful act pursuant to N.J.S.A. 56:8-2.11;

J.      For maximum statutory damages pursuant the TCCWNA, NJUCC, including damages under N.J.S.A. 12A:9-625(e) and 626, and all other applicable statutes;

K.      For maximum damages pursuant to the CFA;

L.      For reasonable attorneys' fees and costs of suit in connection with this action pursuant to CFA and all other applicable statutes;

M.      For pre-judgment and post-judgment interest;

N.      For such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Brown demands a trial by jury on all issues subject to trial by jury.

## NOTICE TO ATTORNEY GENERAL

A copy of this Complaint will be electronically mailed to the Attorney General of the State of New Jersey within ten days after the filing with the Court, pursuant to N.J.S.A. 56:8-20.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Javier L. Merion and Andrew R. Wolf are designated as trial counsel for Brown.

## CERTIFICATION

Pursuant to R. 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party who should be joined in this action at this time

Dated: April 25, 2023

_/s/Javier L. Merino_
Javier L. Merino, Esq.

_/s/Andrew R. Wolf_
Andrew R. Wolf, Esq.

**THE DANN LAW FIRM PC**
_Counsel for the Plaintiff Lance Brown_
_and those similarly situated_

# EXHIBIT 1

**MARINE INSTALMENT LOAN NOTE AND SECURITY AGREEMENT**

Page 1 of 3

## M & T Bank

No.: _____   Date: 07/26/2015

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all scheduled payments. |
|---|---|---|---|
| 10.24 % | $ 8121.80 | $ 13495.00 | $ 21616.80 |

My Payment Schedule will be:   ■ means an estimate

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 120 | $ 180.14 | Monthly, beginning 08/25/2015 |
|  | $ |  |

My Contract documents will have any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

**Security:** I am giving a security interest in the Property being purchased.
**Filing Fees:** $
**Assumption:** If the Property is to be used as a principal dwelling, someone buying the Property may not assume the remainder of the Agreement on the original terms.
**Late Charge:** If any part of a payment is more than 10 days late, I will be charged 15% of the full payment.
**Prepayment:** If I pay off early, I will not have to pay a penalty.

In this Agreement, the words "I", "me" and "my" mean each and all Borrowers who sign it, individually and together, including any Co-Signers.
The words "you", "your" and "Lender" mean: **M & T BANK, ONE FOUNTAIN PLAZA, P.O. BOX 767, BUFFALO, NY 14240.**

SELLER: KENNETH KNAPP 17 YELLOW BROOK RD COLTS NECK, NJ 07722

| Name | Address | Zip Code |
|---|---|---|

SOURCE: CHESAPEAKE FINANCIAL 420 CHINQUAPIN ROUND RD ANNAPOLIS, MD 21401

| Name | Address | Zip Code |
|---|---|---|

I am the BORROWER(S): LANCE BROWN [redacted] WESTFIELD, NJ 07090

| Name(s) | Address(es) | Zip Code(s) |
|---|---|---|

**PROMISE TO PAY:** I promise to pay to Lender the principal amount of $ THIRTEEN TOUSAND, FOUR HUNDRED, NINETY FIVE AND 00/100   U.S. plus interest at the rate of 10.24   % per year on the unpaid principal balance. I agree to make payments each month as described in the Payment Schedule above. I agree to pay all other amounts which may become due under this Agreement. I agree to make payments to the Lender at the place, or to send payments to the address, which the Lender, or any assigns to which this Agreement may be assigned, has most recently specified. The total cost of my purchase, including my downpayment of $ 3400.00   is $ 25,016.80

**OTHER CHARGES: (a) Late Charge:** I agree to pay a late charge for any payment not paid in full within 10 days of its due date. The late charge will be 15% of the full amount of the payment due. No late charge will be due, however, if the reason that the payment is late is either: (i) attributable to a late charge assessed on a prior payment; or (ii) because, after default by Borrower, the entire outstanding balance on this Agreement is due. No more than one late charge will be imposed for any single scheduled payment. **(b) Returned Check Charge:** I agree to pay a returned check charge of $20.00 if I make a payment with a check that is dishonored by the drawee.

**PROPERTY:** The boat and its extra equipment, described below, which are being purchased with the proceeds of this loan, or are securing this loan, are called the "Property" in this Agreement.

**PROPERTY INSURANCE:** I may choose the person through whom insurance is obtained, subject to your reasonable approval, against loss or damage to the Property and against liability arising out of the use or ownership of the Property. In this Agreement, I am promising to insure the Property and keep it insured.

**LENDER'S SINGLE INTEREST INSURANCE:** [ ] If box is checked, you require Lender's Single Interest Insurance. I may choose the person through whom Lender's Single Interest Insurance is to be obtained. This insurance is for the sole protection of the Lender and my interest is not covered. If obtained through you, the cost of such insurance is shown in the "Itemization of Amount Financed" in the box labeled "To LSI Insurance Company."

**SECURITY AGREEMENT:** To secure the payment of all sums due and the performance of all required obligations under this Agreement, I give to Lender a security interest in the boat and its extra equipment, as shown below, which are called the "Property" in this Agreement.
I understand that this interest covers all proceeds of, additions to, and substitutions for the Property. I give you permission to file a financing statement covering your security interest without my signature on it. In states which require my signature, I agree to execute any financing statement or related document you ask of me to cover your security interest in the Property. At your election, I further authorize you to sign my name to any financing statements you believe are necessary to perfect your security interest in the Property. In states where your security interest will be protected by a notice of lien on a title, I agree to apply for an appropriate certificate of title showing your security interest. If the Property is a Documented Vessel of the United States, or a Vessel eligible for such documentation, I agree to do all things and sign and deliver all documents as you require, to enable you to obtain and maintain rights as a First Preferred Mortgagee of Vessel under the Federal Ship Mortgage Act of 1920, and its successor enactments and amendments. You will then have all of the additional rights provided to you in any Mortgage of Vessel. The Property also secures advances made to protect your interest in the Property.
The Lender may set-off any amounts due and unpaid under this Agreement against any of my money on deposit with Lender or any property held by Lender. This includes any money which is now or may in the future be deposited with Lender by me. Lender may do this without any prior notice to me.

**PROPERTY:**

| Boat Description | [ ] New [X] Used | [X] Inboard [ ] Outboard | Year 2003 | Make or Name of Mfr. RINKER | Hull No. RNK7H99C203 | Length 23 | Weight |
|---|---|---|---|---|---|---|---|
| Motor Description | [ ] New [X] Used | [X] Inboard [ ] Outboard | Year 2003 | Make or Name of Mfr. MERCRUISER | Serial No. 0M1357186 | Horse Power 260 | |
| Motor Description | [ ] New [ ] Used | [ ] Inboard [ ] Outboard | Year | Make or Name of Mfr. | Serial No. | Horse Power | |
| Motor Description | [ ] New [ ] Used | [ ] Inboard [ ] Outboard | Year | Make or Name of Mfr. | Serial No. | Horse Power | |
| Boat Trailer Description | [ ] New [ ] Used | Serial No. | | Make or Name of Mfr. | | Weight | |

Other Equipment and Services Included (Describe):

Name of Vessel: _____   Home Port: _____   Gross Tons: _____   Net Tons: _____

Registration or ID Number: _____   Winter Storage or Anchorage: _____   Summer Anchorage: _____

I must promptly advise you if I move the Property to a new Summer Anchorage or Winter Storage Location.

### Cash Price, Downpayment and Trade-In / Refinance Amount

Cash Price (including accessories, services and taxes) $ 16200.00

Cash Downpayment $ 3400.00

Value of Trade-In $

Lien Payoff: $

Lien Payoff to:

### Itemization of Amount Financed

To Seller / Creditor $ 12800.00

**Including the Following**

For License, Tags and Registration $ 200.00

For Lien Fees $

For $

For $

For $

**Amounts paid to others on my behalf** *

To Credit Insurance Company * $

To LSI Insurance Company * $

To Property Insurance Company $

To CHESAPEAKE FINANCIAL $ 495.00

To $

To $

Amount Financed $ 13495.00

* You may be retaining a portion of these amounts.

Chesapeake Financial Services, Inc.    **Chesapeake Financial Services Application For Consumer Financing**

| **Dealer Name:** | **Contact:** | **Phone:** | **Fax:** |
|---|---|---|---|

**Applicant:** lance brown
**SSN:** redacted

**Co-Applicant:** N/A
**SSN:**

**Address:** redacted

**Address:** N/A
**Relationship:** N/A

**City:** westfield **State:** nj **Zip:** 07090

**City:** N/A **State:** N/A **Zip:**

**Phone#** 9739783693 **Years There:** 8
**Birth Date:** redacted
**Previous Address:** N/A

**Phone#** N/A **Years There:** N/A
**Birth Date:**
**Previous Address:** N/A

**City:** N/A **State:** N/A **Zip:** N/A

**City:** N/A **State:** N/A **Zip:** N/A

**Present Employer:** TPC Appraisals -Self employed
**Years There:** 13
**Address:** redacted **Phone:** 9739783693

**Present Employer:** N/A
**Years There:** N/A
**Address:** N/A **Phone:** N/A

**City:** westfield **State:** nj **Zip:** 07090

**City:** N/A **State:** N/A **Zip:** N/A

**Gross Monthly Salary:** redacted
**Position Held:** Presiden

**Gross Monthly Salary:** $
**Position Held:** N/A

**Previous Employer:** N/A
**Years There:** N/A
**Address:** Phone: N/A

**Previous Employer:** N/A
**Years There:** N/A
**Address:** Phone: N/A

**City:** N/A **State:** N/A **Zip:** N/A

**City:** N/A **State:** N/A **Zip:** N/A

**Additional Income Source:** N/A
**Monthly Amount:** $

**Additional Income Source:** N/A
**Monthly Amount:** $

**Other Income:** Alimony, child support or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

| **Home:** Own ☐ Rent ☐ Live With Relatives ☐ Paid For ☐ | **Home:** Own ☐ Rent ☐ Live With Relatives ☐ Paid For ☐ |
|---|---|

| **Mtg. Co. / Landlord Name** | **Monthly Payment** $ | **Mtg. Co. / Landlord Name** N/A | **Monthly Payment** $ |
|---|---|---|---|

| **Purchase Price** $ | **Current Balance** $ | **Market Value** $ | **Purchase Price** $ | **Current Balance** $ | **Market Value** $ |
|---|---|---|---|---|---|

**Have you ever claimed bankruptcy or had any Federal Liens against you?**
**Applicant** Yes ☐ No ☐ / **Co-Applicant** Yes ☐ No ☐

**Are you a U.S. Citizen?  Applicant** Yes ☑ No ☐ / **Co-Applicant** Yes ☐ No ☐

By signing this application, you promise that all the information is true and complete. You intend the seller and/or assignee to rely upon these promises in deciding to extend credit to you. You authorize the seller or assignee to release information about your credit record and your employment history. You also authorize the seller or assignee to release information about your credit.

*Signature* _____    *Signature* _____

| New ☐ | Used ☑ | Boat ☐ | Motor Home ☐ | Trailer ☐ | Camper ☐ |
|---|---|---|---|---|---|

| **BOATS ONLY** | **REC VEHICLES ONLY** | |
|---|---|---|
| Year 2003 | Year _____ | Sales Price 15000 |
| Make rinker | Make _____ | Taxes 1200 |
| Model captiva | Model _____ | Docs, Reg, Fees 795 |
| Size 23 | Size _____ | Warranty / Gap 0 |
| I/O ☐ Outboard ☐ Inboard ☐ | Gas ☐ Diesel ☐ | Total Sale 16995 |
| Gas ☑ Diesel ☐ | Engine Make _____ | Cash Down 3400 |
| Twin ☐ Single ☑ | | Trade Allowance 0 |
| Horse Power 260 | **LOAN TERM REQUESTED** | Trade Payoff 0 |
| Engine Make 5.0 | _____ Years | Payoff Lender _____ |
| Model merc ___ Year 2003 | | Net Trade _____ |
| Trailer Yes ☑ No ☐ | Dealer Cost New _____ | Loan Amount 13495 |

| **Best Contact Number:** 9739783693 | **Email Address:** lance.tpc@gmail.com |
|---|---|

# EXHIBIT 2



**M&T Bank**

PO BOX 1345
BUFFALO NY  14240-1345

ADDRESS SERVICE REQUESTED

May 6, 2019

PERSONAL & CONFIDENTIAL
LANCE BROWN
redacted
WESTFIELD NJ  07090-1641

RE:    Alternate #     :  7924051
       Account #       :  redacted
       Vin Number      :  00000Rnk71499E203
       Balance         :  $11070.44

Dear Lance Brown,

You are currently in breach of your contractual obligation to M&T Bank.  As a result, M&T Bank demands that you pay the balance in full within ten (10) days from the date of this letter.  If you fail to pay the balance in full or refuse to contact us within ten (10) days to discuss an amicable resolution, we will presume you have no intention of resolving this matter.  At that time, we will review your account to determine the appropriate actions, which may include referral to an external collection agency, or referral to our attorney for legal action.

Please call our office immediately while you have the greatest number of options available to you to resolve this matter.

If you are sending in a payoff, please direct your payment to:

**M&T Bank - Recovery**
**Ground Floor**
**1100 Wehrle Dr.**
**Williamsville, NY  14221**

Attn: Gary Lang

If you have any questions, please don't hesitate to call me at 1-800-724-2445 ext. 6508

Sincerely,

*Gary Lang*
Recovery Specialist

This is an advisement that any settled amount paid for less then the balance owed at year-end of the payment being received, will require that you receive a 1099c statement.  For further information on how to prepare the 1099c statement, contact your tax adviser or the Internal Revenue Service

*This is an attempt to collect a debt.*
*Any information obtained will be used for the purpose of collecting this debt.*

redacted

# EXHIBIT 3

**M&T** Bank

## MARYLAND NOTICE
## OF REPOSSESSION AND RIGHT TO REDEEM

CERTIFIED MAIL/RETURN RECEIPT REQUESTED AND REGULAR FIRST CLASS
MAIL                                                           5/7/2019 11:21:53 AM

LANCE BROWN
redacted
WESTFIELD, NJ 07090

Re:

| | |
|---|---|
| Borrower: | LANCE BROWN |
| Account No.: | redacted |
| Contract Date: | 7/26/2015 |
| Collateral: | 2003 RINKER CAPTIVA |
| VIN: | RNK71499E203 |

Dear LANCE BROWN

We have repossessed the Collateral described above ("Collateral"), on 5/5/2019. The repossessed
Collateral is being stored at Secure Collateral Management; 361 GROVE STREET, NEWARK,
NJ 07103.

### Acceleration of Account Balance

You are hereby advised that, pursuant to the terms of the Contract, all amounts owed under the
contract have been accelerated and are now due and owing to the Bank.  Demand is hereby made
for payment of accelerated Account balance of $11,070.44, as of  5/7/2019 11:21:53 AM, plus per
diem rate of interest of  $  0.00 after  5/7/2019 11:21:53 AM. In addition, the Contract also
obligates you to pay certain additional costs to the Bank, including the costs of selling the
Collateral.  Notwithstanding our acceleration of the amounts due under the Contract, you have
the right to get your Collateral back as described below.

The past due amounts owed under the Contract described above ("Contract"), as of the date of
this Notice, are as follows:

| | |
|---|---|
| Past Due Payments: | $1,080.84 |
| Late Charges: | $ 109.75 |
| Repossession Fees: | $1,170.00 |
| Storage Fees as of 5/7/2019 11:21:53 AM: | $ 120.00 |
| (add storage fees of 40 per day after 5/7/2019 11:21:53 AM) | |
| TOTAL PAST DUE AMOUNT: | $2,480.59 |

You are hereby notified that you have the RIGHT TO REDEEM your Collateral and reinstate the
Contract by paying us the TOTAL PAST DUE AMOUNT owed under the Contract when you

1

**M&T** Bank

make your payment, within 15 days following the date of this letter. If you tender your redemption payment to us on or after 3/25/2019, the amount you must pay is $2,480.59, which amount equals the sum of the TOTAL PAST DUE AMOUNT shown above, and the monthly Contract payment of $ 180.14 due on 3/25/2019. Please make certain to include in your payment storage fees accruing from the date of this letter through the date of redemption.

**If you desire to redeem your Collateral within fifteen (15) days following the date of this letter, you may do so by delivering the TOTAL PAST DUE AMOUNT (as set forth above) to a local M&T Bank Branch or remit a certified check to the following address:**

> M&T Bank
> Attention: Remarketing Support
> PO Box 844
> Buffalo, NY 14240

You also have the right to get your Collateral back at any time before we sell it by paying us the full amount you owe (not just the past due payments) including our expenses. You may call us at 1-800-724-8644 or write us at M&T Bank, Attention: Remarketing Support, PO Box 2187, Buffalo, NY 14240 to obtain information concerning the amount due to redeem the Collateral and to arrange to redeem the Collateral. As of the date of this notice, the amount required to redeem the Collateral by paying the full amount you owe is:

| | |
|---|---|
| Unpaid principal balance: | $10,529.41 |
| Accrued finance charges: | $ 431.28 |
| Unpaid late charges: | $ 109.75 |
| Repossession expenses: | $1,170.00 |
| Sale preparation expenses: | $ 200.00 |
| Storage expenses: | $ 120.00 |
| Attorney fees incurred: | $  0.00 |
| Legal costs incurred: | $  0.00 |
| Other amounts due (itemize and describe) | |
| | |
| Amount Required to Redeem: | $12,560.44 |

The longer you wait, the more you may have to pay to get the Vehicle back. The amount of finance charges you owe will increase each day you pay after the date of this notice. We may also incur additional expenses for which you may be responsible including the reasonable expenses of repossessing, holding, preparing for sale and selling the property and reasonable attorneys' fees and legal expenses, as permitted by law. You must pay the amount required to redeem by a cashier's check payable to us.

If you do not redeem the Collateral as described above, we will sell it as indicated below.

2

M&T Bank

We will sell the Collateral at public sale.  A sale could include a lease or license.  The sale will be held as follows:

Date:
Time:
Place:

You may attend the sale and bring bidders if you want.

We will sell the Collateral at a private sale.  A sale could include a lease or license.  The sale will be held as follows:

Date: June 18, 2019
Time: 09:00 AM
Place: Manheim Keystone PA; 488 Firehouse Rd., Grantville, PA 17028

If we resell the Collateral and the amount of sale proceeds is insufficient to pay the contract balance, including any expenses allowable under Maryland law, you will be responsible for the payment of the deficiency that remains.  Alternatively, if the Collateral sale proceeds exceed the full Contract balance, including any expenses allowable under Maryland law, you may be entitled to any surplus proceeds.  If we sell the Collateral, we will provide you a written statement describing the application/distribution of the sale proceeds.

We may report information about your Account to credit bureaus.  Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

If you have filed for relief under the United States Bankruptcy Code, please understand that this Notice is given to you as a requirement of state law and is not an attempt to collect a debt, including any deficiency after the sale.  However, if you have not filed for relief under the United States Bankruptcy Code, then this is an attempt to collect a debt and any information obtained will be used for that purpose.

If you have any questions, you may contact us at the telephone number listed below. The office hours associated with our phone number 1-800-724-8644 are Monday through Thursday 8:00 am – 9:00 pm, EST and Friday 8:00 am – 5:00 pm EST.

Sincerely,

Deborah Peck
1-800-724-8644

# EXHIBIT 4

NJ Powerboat, LLC.

332 Mantoloking Road
Brick, NJ 08723

a PROTECHNOLOGIES CO.

# Service and Parts Invoice

| Date | Invoice # |
|------|-----------|
| 6/6/2016 | 213 |

| Phone # | 732-477-7039 |
|---------|--------------|
| E-mail | njpowerboat@gmail.com |

**Bill To**

Lance Brown
redacted
West Field, NJ 07090
973-978-3693

**Ship To**

Lance Brown
redacted
West Field, NJ 07090
973-978-3693

| Terms | | | | Engine #'s | Hull ID# |
|-------|--|--|--|------------|----------|
| | | | | | |

| Item Code | Quantity | Description | Price Each | Fail/ Serviced | Amount |
|-----------|----------|-------------|------------|----------------|--------|
| Engine | 1 | Engine | 9,618.75 | | 9,618.75T |
| Discount | 1 | Engine Discount | -1,018.75 | | -1,018.75T |
| Labor | 1 | Installation | 1,400.00 | | 1,400.00T |
| | | Sales Tax | 7.00% | | 700.00 |

6-9-16
Pd 5000.00

Bal due $350.00   PIF 6/10/16
Jara
Giainno

| | | | | | **Total** | $10,700.00 |

WARRANTY DISCLAIMER: Due to the intended usage and/or Hi-Performance nature of the parts and
services purchased on this Invoice, there are no warranties, expressed or implied. Buyer agrees to hold
harmless Nj Powerboat, LLC., and its employees from any loss, damage or liabilities therefrom.

# EXHIBIT 5

Jump to
Sections of this page
Accessibility Help
Press alt + / to open this menu

Top of Form

Email or Phone   Password

[                    ]   [ Log In ]

Forgot account?

Bottom of Form
Sign Up
Top of Form

[            ]   Search this groupBottom of Form





Join Group
*settings*More
Join this group to post and comment.

English (US) · Español · Português (Brasil) · Français (France) · Deutsch
Privacy · Terms · Advertising · Ad Choices · Cookies ·
More
Facebook © 2020

**News Feed**



**Frankie Frank**
January 30 at 1:01 PM

Being offered FOR SALE by Unique Marine is this beautiful 2003 Rinker 232 Captiva Liberty Edition which has been repowered with a complete Mercruiser 350 mag mpi engine package that only has 135 hours of operation on it. This engine has been used easily over the past few years with a majority of its hours below 3000rpm. This vessel is equipped with an alpa 1 gen 2 outdrive and stainless steel propeller. The outdrive is in excellent condition. Unique Marine has gone through the entire boat and replaced the following this week: Fuel filters, engine oil and filter, outdrive oil, complete impeller rebuild kit, outdrive pressure and vacuum tested, engine alignment checked, new throttle cable installed, new fuel gauge and fuel sender, new blower motor, new bluetooth stereo receiver, new fresh water pump for sink and shower, new steering booster, new exhaust flappers, and a new interstate battery. The bottom has been painted this week with interlux aqua one and the outdrive with trilux 33 outdrive paint. The entire boat has been detailed from bow to stern. This is a turn key boat ready for the 2020 boating season. This boat comes with a newer cockpit cover as well. To see this boat please stop into our shop at 24 Olympic Way, Poughkeepsie NY 12603. She is inside our heated showroom so it can be viewed comfortably. If purchased over the winter boat will be shrink wrapped and can be stored here until April at no charge.
Thanks for looking and have a great day!

BOAT ONLY NO TRAILER: PRICE $14,900.

BOAT AND BRAND NEW 2020 ALUMINUM I BEAM TRAILER: PRICE $18,490.

LENGTH: 24FT - BEAM: 8'6 - WEIGHT: 4215 - FUEL CAPACITY: 68 GALLONS







$14,900

2003 Rinker 232 Captiva…

La Grange, NY…

Top of Form

5 Shares
Share
Bottom of Form
More Listings Near You

$152,000



**Renault Fuego gtx 2.2**
Boulogne Sur Mer, Buenos Aires · over a week ago

$165,000



**Renault tráfic 1998 larga 2.2 diesel $165000 precio publicado efectivo. No en permuta!!!!**

Banfield Este, Buenos Aires · over a week ago

$75,000



**Corsa full**

Ciudad de Buenos Aires, Ciudad Autónoma de Buenos Aires · over a week ago

$77,000



**RENAULT KANGOO 2001 FAMILIAR AIRE TITULAR 08 $77000 1535487753**

Ciudad de Buenos Aires, Ciudad Autónoma de Buenos Aires · 3 days ago

See More on Marketplace

- English (US)
- Español
- Français (France)
- 中文(简体)
- العربية
- Português (Brasil)
- Italiano
- 한국어
- Deutsch
- हिन्दी
- 日本語
-

- Sign Up
- Log In
- Messenger
- Facebook Lite
- Watch
- People
- Pages
- Page Categories
- Places
- Games
- Locations
- Marketplace
- Groups
- Instagram
- Local

- Fundraisers
- Services
- About
- Create Ad
- Create Page
- Developers
- Careers
- Privacy
- Cookies
- Ad Choices
- Terms
- Help
- Settings
- Activity Log

Facebook © 2020

Close



● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● *PrevNext*

Marketplace
›

Vehicles

…

2003 Rinker 232 Captiva
Poughkeepsie, NY · over a week ago ·

$14,900

- **About This Vehicle**

-
o
o   Exterior color: Off_white · Interior color: Off_white

**Seller's Description**
2003 Rinker 232 Captiva for sale in Poughkeepsie on Facebook Marketplace

Being offered FOR SALE by Unique Marine is this beautiful 2003 Rinker 232 Captiva Liberty
Edition which has been repowered with a complete Mercruiser 350 mag mpi engine package that
only has 135 hours of operation on it. This engine has been used easily over the past few years
with a majority of its hours below 3000rpm. This vessel is equipped with an alpa 1 gen 2
outdrive and stainless steel propeller. The outdrive is in excellent condition. Unique Marine has
gone through the entire boat and replaced the following this week: Fuel filters, engine oil and
filter, outdrive oil, complete impeller rebuild kit, outdrive pressure and vacuum tested, engine
alignment checked, new throttle cable installed, new fuel gauge and fuel sender, new blower
motor, new bluetooth stereo receiver, new fresh water pump for sink and shower, new steering
booster, new exhaust flappers, and a new interstate battery. The bottom has been painted this
week with interlux aqua one and the outdrive with trilux 33 outdrive paint. The entire boat has
been detailed from bow to stern. This is a turn key boat ready for the 2020 boating season. This
boat comes with a newer cockpit cover as well. To see this boat please stop into our shop at 24
Olympic Way, Poughkeepsie NY 12603. She is inside our heated showroom so it can be viewed
comfortably. If purchased over the winter boat will be shrink wrapped and can be stored here
until April at no charge. Thanks for looking and have a great day! BOAT ONLY NO TRAILER:
PRICE $14,900. BOAT AND BRAND NEW 2020 ALUMINUM I BEAM TRAILER: PRICE
$18,490. LENGTH: 24FT - BEAM: 8'6 - WEIGHT: 4215 - FUEL CAPACITY: 68 GALLONS
Ask for Details

# EXHIBIT 6



S-SFMRSA11
PC4LLX00200178 - 622866103 I00356
*Return Address :*
MRS BPO, L.L.C.
1930 OLNEY AVENUE
CHERRY HILL NJ 08003

CHERRY HILL NJ 08003
866-620-3678

Office Hours:
Monday - Thursday   9am - 9pm ET
Friday                      9am - 5pm ET

LANCE BROWN
redacted
WESTFIELD NJ 07090-1641

May 13, 2020

| CREDITOR: M & T Bank |
| CREDITOR ACCT#: redacted |
| MRS ACCT#: LU1. redacted |
| **ACCOUNT BALANCE : $10,799.74** |

Dear LANCE BROWN,

The above referenced creditor has placed your account with our office for collection.  We recognize that sometimes circumstances or events can make it difficult to satisfy your financial obligations.

Resolving a long overdue debt is never easy.  Often the hardest part is taking the first step.  We are ready to assist you to find a solution that is both fair and reasonable.

Payment may be made by calling 866-620-3678, mailing to the above address or you can pay online at  https://portal.mrsbpo.com.

**IMPORTANT CONSUMER INFORMATION**

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Sincerely,

MRS BPO, L.L.C.
866-620-3678

Tax time is a great time to put issues like this behind you. Consider using any possible tax refund you may receive to satisfy your outstanding obligation.

This is an attempt to collect a debt and any information obtained will be used for that purpose.
This communication is from a debt collector.



001MTwWP

# Civil Case Information Statement

## Case Details: UNION | Civil Part Docket# L-001344-23

**Case Caption:** BROWN LANCE  VS M&T BANK CORPORATION

**Case Initiation Date:** 04/26/2023

**Attorney Name:** JAVIER LUIS MERINO

**Firm Name:** THE DANN LAW FIRM, PC

**Address:** 1520 U.S. HIGHWAY 130 STE 101 NORTH BRUNSWICK NJ 08902

**Phone:** 2013553440

**Name of Party:** PLAINTIFF : Brown, Lance

**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Lance Brown?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
#### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**
This is a putative class action requiring Track4 for complexities of class cert, notice discovery and litigation

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** YES

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

04/26/2023
Dated

/s/ JAVIER LUIS MERINO
Signed

```
UNION COUNTY SUPERIOR COURT
2 BROAD STREET
CIVIL DIVISION
ELIZABETH          NJ 07207
                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (908) 787-1650
COURT HOURS  8:30 AM - 4:30 PM


                    DATE:    APRIL 26, 2023
                    RE:      BROWN LANCE  VS M&T BANK CORPORATION
                    DOCKET: UNN L -001344 23


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.


     DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.


     THE MANAGING JUDGE ASSIGNED IS:  HON ROBERT J. MEGA


     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT:  (908) 787-1650 EXT 21493.


     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R.4:5A-2.
                    ATTENTION:
                         ATT: JAVIER L. MERINO
                         THE DANN LAW FIRM, PC
                         1520 U.S. HIGHWAY 130
                         STE 101
                         NORTH BRUNSWICK  NJ 08902


ECOURTS
```

**FILED**

April 28, 2023

**Hon. Robert J. Mega, P.J.Ch.**

**PREPARED BY THE COURT**

| |
|---|
| LANCE BROWN, on behalf of himself and those similarly situated,<br><br>                     Plaintiff(s),<br>v.<br><br>M&T BANK CORPORATION,<br><br>                    Defendant(s). |

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:  UNION COUNTY
DOCKET NO.:  UNN-L-1344-23

<u>CIVIL ACTION</u>

**ORDER**

**THIS MATTER** having been opened by the Court, *sua sponte*, in order to reassign the above captioned matter's case type from "508 COMPLEX COMMERCIAL" to "999 OTHER (CLASS ACTION)", as the above-captioned matter does not meet the requirements of, or in the Court's judgment benefit from inclusion in the Complex Business Litigation Program (CBLP);

**IT IS** on this **28<u>th</u> day of <u>April</u>, 2023,**

**ORDERED** that the matter entitled Lance Brown, on behalf of himself and those similarly situated v. M&T Bank Corporation is hereby reclassified as a "999 OTHER (CLASS ACTION)" matter and removed from the Complex Business Litigation Program.

DATED: <u>April 28, 2023</u>

/s/ Robert J. Mega
_____
**HON. ROBERT J. MEGA, P.J.Ch.**

LANCE BROWN, ON BEHALF OF HIMSELF AND THOSE SIMILARLY SITUATED

                                                                                      Plaintiff

                                          vs

M&T BANK CORPORATION

                                                                                      Defendant

20230502133002

Superior Court Of New Jersey

UNION Venue

Docket Number: UNN L 1344 23

**Person to be served** (Name and Address):
M&T BANK CORPORATION
PRINCETON SOUTH CORPORATE CENTER 100 CHARLES EWING BLVD,
STE 160
EWING NJ 08638
**By serving:** CORPORATION SERVICE COMPANY

**Attorney:** JAVIER L. MERINO, ESQ.,

**Papers Served:** SUMMONS AND COMPLAINT, CIS, TRACK ASSIGNMENT
NOTICE, EXHIBITS, DEMANDS, CERTIFICATIONS

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____.____

| **Service Data:** | [X] Served Successfully | [ ] Not Served |
| --- | --- | --- |

Date/Time:    5/3/2023 1:29 PM          _____

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age residing
therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to accept service, e.g. managing agent,
registered agent, etc. (indicate name & official title at right)

Name of Person Served and relationship/title:

JIMMY MYERS

PERSON AUTHORIZED TO ACCEPT SERVICE

**Description of Person Accepting Service:**

SEX:M___  AGE:21-35  HEIGHT: 5'9"-6'0"___  WEIGHT: 161-200 LBS.____  SKIN:BLACK      HAIR:BALD     OTHER:_____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] Appears vacant
[ ] No response on:          Date/Time: _____
                             Date/Time: _____
                             Date/Time: _____

Other:

**To Be Used Where Electronic Signature Not Available**
Served Data:
Subscribed and Sworn to me this

_____day of _____, 20 _____

Notary Signature:_____

_____  _____
        Name of Notary            Commission Expiration

**Docusign Court Approved E-Signature**

I, JANE NUNN,
was at the time of service a competent adult, over the age of 18 and
not having direct interest in the litigation. I declare under penalty of
perjury that the foregoing is true and correct.

*JANE NUNN*
_____    05/03/2023
Signature of Process Server                       Date

Name of Private Server: JANE NUNN  Address: 2009 Morris Avenue UNION, NJ 07083  Phone: (800) 672-1952