## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LANCE BROWN**, on behalf of himself and those similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>**MANUFACTURERS AND TRADERS TRUST COMPANY D/B/A M&T BANK**,<br><br>          Defendant. | Civil Action No.: 2:23-cv-03026-MCK-ESK<br><br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT** |

### NATURE OF THE CASE

1.       Plaintiff Lance Brown ("Brown") brings claims on behalf of himself and those similarly situated under the New Jersey Uniform Commercial Code N.J.S.A. 12A:1-101, *et seq.* (NJUCC), Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* (CFA), and Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-14, *et seq.* (TCCWNA), against Defendant Manufacturers and Traders Trust Company d/b/a M&T Bank ("M&T") in connection with its unlawful scheme related to the financing and disposition of repossessed collateral vehicles.

2.       M&T repossessed and disposed of the collateral vehicles of Brown and others similarly situated in a manner that was not commercially reasonable as required by New Jersey law. M&T's unlawful practices included, but were not limited to, providing notices of intent to sell repossessed collateral vehicles which violate the rights of New Jersey consumers and charging fees prohibited by New Jersey law.

3.       As a result of M&T's deceptive and unconscionable business practices, Brown and others suffered ascertainable losses including, but not limited to, improper fees, losses related to disposing of repossessed collateral vehicles in a manner that was not commercially reasonable in

every respect, and the amounts of the alleged debts demanded by M&T.

## VENUE

4.      Venue is proper in Union County as it is the location of Brown's residence and where a number of the complained of actions took place.

## STATEMENT OF FACTS

5.      Brown resides in Westfield, New Jersey.

6.      M&T is a bank holding company with approximately one hundred branches located in New Jersey.

7.      M&T has a headquarters located in Buffalo, New York.

8.      M&T is a financial institution that provides financing for consumer home, automobile, and vehicle loans.

9.      M&T utilizes the services of financing agencies which connect consumers with financial agencies to obtain loans.

10.     Chesapeake Financial Services, Inc. ("Chesapeake Financial") is a financing agency that connects consumers with financial institutions to obtain loans, including M&T, with a specialization for boat and recreational vehicle loans.

11.     On or around July 24, 2015, Brown sought to purchase a 2003 Rinkler Captiva Cuddy motorboat, Load Rite Trailer, and MerCruiser brand motor for personal and family use.

12.     Brown applied online for financing through Chesapeake Financial.

13.     Chesapeake Financial communicated to M&T information regarding Brown's credit application and his purchase for M&T to consider providing Brown with a direct loan.

14.     After Brown applied to Chesapeake Financial for a loan, M&T, or its agent, created a document titled "Marine Installment Loan Note and Security Agreement", which contains the

terms of the loan between M&T and Brown ("M&T Loan Note"). A copy of the M&T Loan Note is attached as **Exhibit 1**.

15.     The M&T Loan Note mentions two items of property, the Rinkler motorboat and MerCruiser motor, which serve as security for the loan. *See* Exhibit 1.

16.     The M&T Loan Note includes the following terms:

a.  "Cash Price" of $16,200.00;
b.  "Cash Downpayment" of $3,400.00;
c.  "Amount Financed" of $13,495.00;
d.  "Finance Charge" of $8,121.80;
e.  "Annual Percentage Rate" of 10.24%;
f.  120 payments of $180.14; and,
g.  "Total of Payments" of $21,616.80.

*See* Exhibit 1.

17.     The M&T Loan Note identifies the loan "Source" as Chesapeake Financial. *See* Exhibit 1.

18.     The M&T Loan Note indicates that $495.00 of the $13,495.00 identified as the "Amount Financed" was an "Amount paid to others on my behalf". *See* Exhibit 1.

19.     The M&T Loan Note indicates that the $495.00 of the $13,495.00 identified as the "Amount Financed" was paid to Chesapeake Financial. *See* Exhibit 1.

20.     Brown signed the M&T Loan Note, which was then accepted by M&T.

21.     The M&T Loan Note was fully executed by Brown and M&T.

22.     Following M&T entering the loan agreement with Brown, M&T paid Chesapeake Financial $495.00.

23.     M&T's payment to Chesapeake Financial in connection to Brown's loan was a loan fee, finder's fee, or similar charge charged in connection with the extension of credit to Brown.

24.     M&T's payment to Chesapeake Financial was made pursuant to an agreement between M&T and Chesapeake Financial.

25.     M&T's payment to Chesapeake Financial was made pursuant to an agreement between M&T and Chesapeake Financial whereby Chesapeake Financial provides M&T with consumer loan candidates and M&T provides Chesapeake Financial with compensation when it enters a loan agreement with such a candidate.

26.     Following M&T entering the loan agreement with Brown, M&T, or its agents, arranged for a lien to be placed on the title of Brown's motorboat.

27.     Brown received a loan check in the amount of $12,800.00 after the loan documents and transaction was completed.

28.     Brown paid the seller a down payment in the amount of $3,400.00.

29.     Brown paid the seller of the motorboat the full check amount financed of $12,800.00.

30.     Brown purchased the motorboat trailer from the seller with his own money and not as part of any loan.

31.     Brown took possession of the motorboat and trailer on or around August 3, 2015.

32.     Brown did not receive a deficiency notice prior to M&T's repossession of the motorboat.

33.     On or around May 5, 2019, the motorboat was repossessed by Commercial Services Corporation ("CSC"), a repossession company located at 361 Grove St., Newark, New Jersey.

34.     The repossession agent took the motorboat and trailer and did not return the trailer until threatened with arrest.

35.     When Brown discovered that the trailer was taken, Brown reported it stolen to the Westfield Police Department.

36.     Brown showed a Westfield Police Department officer the title for trailer and explained that item was not part of M&T's security interest.

37.    The officer ordered the repossession agent to return the trailer or an arrest warrant would be issued.

38.    M&T incorrectly informed the repossession agent that the trailer was included in M&T's lien.

39.    The repossession agent eventually returned the trailer to Brown.

40.    At the time of the repossession, Brown's personal property in the motorboat included:

   a.  Canvas tarp to cover the motorboat;
   b.  Life preserver jackets;
   c.  Rafts;
   d.  Tools;
   e.  New motorboat engine;
   f.  Extra speaker;
   g.  Amplifier; and
   h.  Additional personal items.

41.    The day after the repossession, on or about May 6, 2019, M&T sent Brown a letter (the "Demand Letter"). A copy of the Demand Letter is attached as **Exhibit 2**.

42.    The Demand Letter demanded Brown pay $11,070.44, which it identified as the "balance in full" of his "contractual obligation to M&T". *See* Exhibit 2.

43.    When M&T sent Brown the Demand Letter, he did not owe M&T $11,070.44.

44.    The next day, on or about May 7, 2019, M&T sent Brown a Notice of Repossession and Right to Redeem. A copy of the Notice of Repossession and Right to Redeem is attached as **Exhibit 3**.

45.    The Notice of Repossession and Right to Redeem states that M&T had accelerated all amounts due under the contract and they "are now due and owing". *See* Exhibit 3.

46.    The Notice of Repossession and Right to Redeem identifies the "TOTAL PAST DUE AMOUNT" owed as $2,480.59 comprised of $1,080.84 identified as "Past Due Payments",

$109.75 identified as "Late Charges", $1,170.00 identified as "Repossession Fees", and $120.00 identified as "Storage Fees" ($40 per day). *See* Exhibit 3.

47.     The Notice of Repossession and Right to Redeem states that if Brown wished to redeem his collateral within fifteen days of May 7, 2019, he "may do so by delivering the total past due amount" consisting of the $2,480.59 total past due amount plus daily storage fees. The Notice of Repossession and Right to Redeem also stated that Brown had the right to redeem his collateral and reinstate the contract by paying the total past due amount identified as $2,480.59. *See* Exhibit 3.

48.     The Notice of Repossession and Right to Redeem states "[w]e will sell the collateral at public sale. A sale could include a lease or license. The sale will be held as follows: Date: [Blank] Time: [Blank] Place: [Blank]."

49.     The Notice of Repossession and Right to Redeem simultaneously states "[w]e will sell the collateral at private sale. A sale could include a lease or license. The sale will be held as follows: Date: June 18, 2019 Time: 9:00:00 AM Place: Manheim Keystone PA; 488 Firehouse Rd. Grantville, PA 17028.

50.     The Notice of Repossession and Right to Redeem also states "[y]ou also have the right to get your Collateral back at any time before we sell it by paying us the full amount you owe (not just the past due payments) including our expenses.

51.     The Notice of Repossession and Right to Redeem identifies this "full amount you owe" $12,560.44 comprised of $10,529.41 identified as "Unpaid principal balance", $431.28 identified as "Accrued finance charges", $109.75 identified as "Late Charges", $1,170.00 identified as "Repossession expenses", $200.00 identified as "Sale preparation expenses", and $120.00 identified as "Storage expenses". See Exhibit 3.

52.     M&T's notice of repossession did not comply with New Jersey notice requirements.

53.     Brown went to retrieve his personal property on or around two weeks after the motorboat was repossessed.

54.     The repossession agent informed Brown that the motorboat, along with the personal property inside the motorboat, had been sent to Pennsylvania to be sold.

55.     The physical act of repossession was not done in a commercially reasonable manner, because the repossession agent could not remove the motorboat from Brown's driveway without damaging the engine, which was winterized and 1-2 inches above ground.

56.     The repossession agent damaged Brown's driveway as a result of the repossession.

57.     Brown made improvements to the motorboat after the motorboat was financed by M&T. Specifically, Brown reconditioned the motorboat by cleaning, painting, and winterizing the motorboat. Brown expended approximately $2,324.00 of his own personal money to make said reconditioning improvements to the motorboat.

58.     Brown also added a new engine to the motorboat, which he paid for with his own financial resources. A copy of an invoice from NJ Powerboat, LLC is attached as **Exhibit 4**.

59.     Brown spent a total of $10,700.00 on the new engine and installation into the motorboat. *See* Exhibit 4.

60.     The loan made by M&T in 2015 was based on the wholesale amount of the motorboat.

61.     The motorboat increased in value since M&T financed the transaction due to said improvements.

62.    The repossessed motorboat was being advertised via Facebook.com for $14,900.00, more than the amount financed by M&T. A copy of the advertisement from Facebook.com is attached as **Exhibit 5**.

63.    The advertisement for the motorboat attested to the motorboat's new engine, newly painted exterior, and detailing. *See* Exhibit 5.

64.    The motorboat was also advertised on M&T's website for collateral vehicles being sold by M&T.

65.    The advertisement of the motorboat on Facebook.com and M&T's website was not disclosed in any of the notifications provided to Brown.

66.    Through correspondence dated May 13, 2020, M&T through a third-party collection agency, advised Brown that he owed an "account balance" of $10,799.64. A copy of the collection notice is attached as **Exhibit 6**.

67.    Brown did not receive notice of sale of the motorboat, and as of December 20, 2021, does not know if the motorboat has been successfully sold. However, it appears that M&T may have sold the motorboat, as the May 13, 2020 collection notice demanded an account balance of $10,799.74, meanwhile M&T's earlier collection notices demanded in excess of $15,000.00.

68.    Brown suffered an ascertainable loss as a result of M&T's business practices including, but not limited to:

        a.    The value of the motorboat at the time it was repossessed;

        b.    The amount M&T demanded and reported as a debt on Brown's credit report;

        c.    The difference between what the motorboat should have been sold for and what it was actually sold for;

        d.    The value of personal property inside the motorboat at the time of repossession which was not returned;

        e.    The damage to Brown's physical property; and,

f.   The amount of fees charged to Brown that he did not owe.

## CLASS ACTION ALLEGATIONS

69.     This action is brought and may properly proceed as a class action, pursuant to the

provisions of R. 4:32 for a class pursuant to R. 4:32-1(b)(2) and/or (b)(3). Brown brings this action

on behalf of himself and others similarly situated. The proposed class is defined as follows:

> All consumer obligors who resided in New Jersey on the date the
> original complaint was filed, whose collateral vehicle was
> repossessed in New Jersey at any time on or after the day four years
> prior to the date the initial Complaint was filed, where the collateral
> vehicle was subject to a repossession effort collected by or on behalf
> of M&T where M&T: (a) disposed of the collateral vehicle in a
> manner the same or similar to the manner that M&T attempted to
> dispose of Brown's motorboat or (b) sent them a deficiency demand
> letter the same or similar to that sent to Brown.

70.     The Class for whose benefit this action is brought is so numerous that joinder of all

members is impracticable. The precise size of the proposed class and the identity of its members

will be readily ascertainable from M&T's business records.

71.     There are questions of law and fact common to the members of the Class. These

common questions include but are not limited to:

a.   Whether M&T sent Brown and those similarly situated a notification before
disposition of collateral that complied with the requirements of N.J.S.A. 12A:9-
613 and N.J.S.A. 12A:9-614;

b.   Whether M&T sent Brown and those similarly situated a notice subsequent to
the disposition of a repossessed collateral vehicle that complied with the
requirements of N.J.S.A. 12A:9-616;

c.   Whether the violations of N.J.S.A. 12A:9-616 was part of a pattern, or
consistent with a practice of noncompliance with that statute;

d.   Whether the violations of N.J.S.A. 12A:9-614 and/or N.J.S.A. 12A:9-616
constitute violations of the TCCWNA;

e.   Whether M&T charged Brown and those similarly situated for amounts not
owed;

    f.    Whether M&T sold the collateral vehicles of Brown and those similarly situated in a manner that was commercially reasonable in every respect;

    g.    Whether M&T's conduct described herein violated the NJUCC, CFA, and/or the TCCWNA; and

    h.    Whether M&T's practice of placing an advertisement in a newspaper stating that members of the Class had their collateral vehicle repossessed is permitted by contract or constitutes an unconscionable commercial practice when a fee is charged for that advertisement.

72.    Proof of a common set of facts will establish liability and the right of each Class member to recover.

73.    The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual Class members.

74.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

75.    While the economic damages suffered by the individual Class members are significant, the amount may be modest compared to the expense and burden of individual litigation.

76.    A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort, and expense.

77.    Brown's claims and defenses are typical of the claims and defenses of the members of the Class, since all such claims and defenses arise out of common practices and standardized form documents.

78.    Brown does not have interests antagonistic to those of the Class.

79.    The Class, of which Brown is a member, is ascertainable.

80.    Brown will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in the prosecution of consumer class actions.

81.     M&T has acted or refused to act on grounds generally applicable to Brown and those similarly situated, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

82.     Brown does not anticipate any difficulty in the management of this litigation.

## CLASS ACTION ALLEGATIONS

## COUNT ONE
## VIOLATIONS OF THE UNIFORM COMMERCIAL CODE

83.     Brown, on behalf of himself and all others similarly situated, restates and incorporates all of his statements and allegations contained in paragraphs 1 through 80, in their entirety, as if fully rewritten herein.

84.     The collateral vehicles purchased by Brown and those similarly situated are "consumer goods" as defined by the NJUCC at N.J.S.A. 12A:9-102(a)(23).

85.     The transactions whereby Brown and those similarly situated purchased the collateral vehicles from Defendant are "consumer-goods transactions" as defined by the UCC at N.J.S.A. 12A:9-102(a)(24).

86.     Brown and those similarly situated are consumer obligors under N.J.S.A. 12A:9-102(a)(25).

87.     M&T violated N.J.S.A. 12A:9-610 by failing to dispose of the collateral vehicles of Brown and others similarly situated in a manner that was commercially reasonable in every respect.

88.     Among other reasons, M&T's conduct was commercially unreasonable in that:

    a.  M&T failed to conduct an investigation, study, survey, or other inquiry to determine what type of sale would likely generate the highest price for collateral vehicles;

    b.  M&T failed to provide Brown and others similarly situated with notification before disposition of collateral that contained the information required by

N.J.S.A. 12A:9-614(1)(A), which mandates that a notice of disposition must provide the information specified in 12A:9-613(1). Meanwhile, M&T failed to comply with 12A:9-613(1)(D) in that M&T failed to state that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting. Thus, M&T violated 12A:9-613(1)(D), which in turn, is a per se violation 12A:9-614(1)(A);

c.   M&T failed to advertise the sale of the collateral vehicles of Brown and others similarly situated in a manner that was commercially reasonable in every respect;

d.   M&T represented to Brown and others similarly situated that a public auction would be held in an attempt to dispose of their collateral vehicles but failed to hold a commercially reasonable public auction;

e.   M&T charged Brown and others similarly situated one or more fees not part of M&T's reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing of its collateral vehicles; and,

f.   M&T obtained sales prices for the disposition of collateral vehicles that were unreasonably low or failed to credit the proceeds of the sale to the balance of the loans of Brown and others similarly situated.

89.   M&T violated N.J.S.A. 12A:9-613(1) its transactions with Brown and those similarly situated by failing to adequately state:

a.   The intended method of disposition. First, M&T stated the collateral was being sold at public auction, yet failed to identify either the date, time, or place of the auction. Then, M&T  stated the collateral was being sold privately, but instead of identifying a date "after" it would be sold, it improperly stated a specific date the collateral would be sold.;

b.   That the consumer obligor was entitled to an accounting of the unpaid indebtedness. Here, the notice entirely failed to advise Brown of his right to the accounting; and,

c.   The charge, if any, for such an accounting; and state the time and place of a public disposition or the time after which any other disposition is to be made.

90.   M&T violated N.J.S.A. 12A:9-614 its transactions with Brown and those similarly situated by failing to provide the information required by N.J.S.A. 12A:9-613(1) and to adequately describe the liability for a deficiency .Specifically, the notices failed to state "[t]he money that we

get from the sale (after paying our costs) will reduce the amount you owe."[1] Furthermore, the notices: (1) fail to "state the method of intended disposition", as the notice states *both* a public and private disposition; (2) fail to "state[] that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting"; and (3) fail to states the time and place of a public disposition…" *See* N.J.S.A. 12A:9-613(1)(C), (D), (E).

91.    M&T violated N.J.S.A. 12A:9-623 in its transactions with Brown and those similarly situated by failing to allow Brown and others similarly situated the right to redeem their collateral vehicles by fulfilling all obligations secured by the collateral and paying the reasonable expenses and attorneys' fees described in 12A:9-615(a)(1).

92.    M&T violated N.J.S.A. 12A:9-623 its transactions with Brown and those similarly situated by failing to allow Brown and others similarly situated the right to redeem their collateral vehicles before Defendant disposed of their collateral vehicle. N.J.S.A. 12A:9-623 provides the consumer the right to redeem at any time before the repossessed vehicle is sold by the creditor. The notice does not state this and implies that the right to obtain the vehicle expires in fifteen days.

93.    M&T breached its duty to Brown and those similarly situated as required by N.J.S.A. 12A:9-102(a)(43).

94.    M&T violated N.J.S.A. 12A:9-615 by charging more than the reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing of the collateral vehicles when calculating the alleged deficiency. For example, M&T's $1,170.00 "Repossession Fee" is patently unreasonable. Furthermore, it is unreasonable for M&T to incur a $200.00 "Sale preparation expense" within a day of repossessing the vehicle, and it is unreasonable for M&T to

---

[1] *See* N.J.S.A. 12A:9-614(3)

then incur $2,324.30 in sale preparation expenses as a consequence of its failure to sell the collateral in a commercially reasonable manner.

95.    M&T violated N.J.S.A. 12A:9-627 by failing to dispose of the collateral vehicles of Brown and others similarly situated in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

96.    N.J.S.A. 12A:9-627 provides the following guidance on a commercially reasonable sale:

> (b) Dispositions that are commercially reasonable. A disposition of collateral is made in a commercially reasonable manner if the disposition is made:
>
> > (1) in the usual manner on any recognized market;
> >
> > (2) at the price current in any recognized market at the time of the disposition; or
> >
> > (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

97.    M&T's decision to repeatedly attempt to sell the collateral via a private sale, instead of at public auction, was not commercially reasonable. The fact that as of September 26, 2019, M&T was *still* in possession of the collateral and listing it for private auction on October 15, 2019, approximately *one hundred sixty-three (163) days* after the collateral was originally repossessed, demonstrates M&T's actions were not commercially reasonable.

98.    M&T violated the rights of Brown and those similarly situated under the NJUCC.

99.    M&T breached its duty of "good faith" to Brown and those similarly situated as required by the UCC.

100.    M&T violated N.J.S.A 12A:9-616 by providing Brown and other similarly situated written notices which violated and did not comply with N.J.S.A. 12A:9-616.

101.    The notices that M&T sent Brown and others similarly situated violated N.J.S.A.

12A:9-616(b)(1) by failing to state the amount of the deficiency.

102.    M&T violated N.J.S.A. 12A:9-616(a)(1)(B) and N.J.S.A. 12A:9-616(c) by failing to provide an explanation of how M&T calculated the deficiency, with the following information in the following order:

(1) the aggregate amount of obligations secured by the security interest under which the disposition was made, and, if the amount reflects a rebate of unearned interest or credit service charge, an indication of that fact, calculated as of a specified date:

(A) if the secured party takes or receives possession of the collateral after default, not more than 35 days before the secured party takes or receives possession; or

(B) if the secured party takes or receives possession of the collateral before default or does not take possession of the collateral, not more than 35 days before the disposition;

(2) the amount of proceeds of the disposition;

(3) the aggregate amount of the obligations after deducting the amount of proceeds;

(4) the amount, in the aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing, and disposing of the collateral, and attorney's fees secured by the collateral which are known to the secured party and relate to the current disposition;

(5) the amount, in the aggregate or by type, and types of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled and which are not reflected in the amount in paragraph (1); and

(6) the amount of the surplus or deficiency.

103.    M&T violated N.J.S.A. 12A:9-616(a)(1)(C) by failing to state that future debits credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the deficiency, aside from a mention that force placed insurance may have been reversed.

104.     M&T's failure to comply with N.J.S.A. 12A:9-616(b)(1) was part of a pattern, or consistent with a practice, or noncompliance.

## COUNT TWO
## VIOLATIONS OF THE CONSUMER FRAUD ACT

105.     Brown, on behalf of himself and all others similarly situated, restates and incorporates all of his statements and allegations contained in paragraphs 1 through 80, in their entirety, as if fully rewritten herein.

106.     The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise.

N.J.S.A. 56:8-2.

107.     Brown and those similarly situated are "consumers" pursuant to the CFA.

108.     M&T is a "person" as defined by the CFA because M&T is a partnership, corporation, company, trust, business entity, or business association. N.J.S.A. § 56:8-1(d).

109.     M&T is subject to the CFA.

110.     M&T's transactions with Brown and those similarly situated are sales of merchandise subject to the CFA.

111.     M&T engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses, and/or misrepresentations, as specified above, in its interactions with Brown and those similarly situated in violation of the CFA.

112.     Each of the above mentioned violations of the NJUCC constitute a violation of the CFA.

113.    M&T committed an unlawful, deceptive, and unconscionable business practice by misrepresenting the amount of the debt allegedly owed by Brown and those similarly situated.

114.    M&T committed an unlawful, deceptive, and unconscionable business practice by charging Brown and others similarly situated a fee for sale preparation expenses.

115.    M&T committed an unlawful, deceptive, and unconscionable business practice by charging fees not incurred or not allowed by law and/or overcharging customers for fees and charges.

116.    Brown and those similarly situated were damaged and suffered an ascertainable loss as a result of the above violation of the CFA, including but not limited to the $200.00 sale preparation expense.

117.    By failing to dispose of the collateral vehicles of Brown and those similarly situated in a manner that was commercially reasonable in every respect, the sale of the collateral vehicles yielded lower prices than if the collateral vehicles were disposed of in a manner that was commercially reasonable in every respect. That difference constitutes an ascertainable loss.

118.    M&T's demand for an improper debt from Brown and those similarly situated constitutes an ascertainable loss.

119.    The amount of the alleged debt of Brown and others similarly situated that M&T reported to a credit reporting agency constitutes an ascertainable loss.

120.    M&T's actions in applying unlawful fees and/or interest to the loan payments and the collateral vehicle sales of Brown and those similarly situated constitutes an ascertainable loss.

## COUNT THREE

### VIOLATIONS OF THE TRUTH-IN-CONSUMER CONTRACT, WARRANTY, AND NOTICE ACT

121.    Brown, on behalf of himself and all others similarly situated, restates and incorporates all of his statements and allegations contained in paragraphs 1 through 80, in their entirety, as if fully rewritten herein.

122.    M&T violated the TCCWNA.

123.    M&T provided a notice, contract, and/or warranty that violated the clearly established rights of Brown and those similarly situated under New Jersey law.

124.    The notices of repossession, deficiency demands, and notice of public sale advertisements that M&T utilized in its transactions with Brown and those similarly situated violated clearly established rights of consumers as set forth in N.J.S.A. 12A:9-613, N.J.S.A. 12A:9-614, , N.J.S.A. 12A:9-616, N.J.S.A. 12A:9-610, and N.J.S.A. 12A:9-623.

125.    Brown and others similarly situated were aggrieved by these violations in ways that include the following:

    a.  By being deprived of their right to legally required information regarding the right to redeem a repossessed collateral vehicle;

    b.  By being deprived of the right to have a repossessed collateral vehicle be disposed of in a manner that was commercially reasonable in every respect;

    c.  By suffering losses resulting from M&T's failure to dispose of their collateral vehicles in a manner that was commercially reasonable in every respect;

    d.  By having the fact of the repossession advertised in a newspaper and included their names;

    e.  By being charged for notice of public sale advertisements; and

    f.  By being sent deficiency demands that failed to identify the repossession fee and which included a public auction cost fee.

## INDIVIDUAL ALLEGATIONS

## COUNT FOUR
## VIOLATIONS OF THE CONSUMER FRAUD ACT

126.    Brown, on behalf of himself and all others similarly situated, restates and incorporates all of his statements and allegations contained in paragraphs 1 through 80, in their entirety, as if fully rewritten herein.

127.    The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise.

N.J.S.A. 56:8-2.

128.    Brown is a "consumer" pursuant to the CFA.

129.    M&T is a "person" as defined by the CFA because M&T is a partnership, corporation, company, trust, business entity, or business association. N.J.S.A. § 56:8-1(d).

130.    M&T is subject to the CFA.

131.    M&T's transactions with Brown is a sale of merchandise subject to the CFA.

132.    M&T engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses, and/or misrepresentations, as specified above, in its interactions with Brown and those similarly situated in violation of the CFA.

133.    M&T committed an unlawful, deceptive, and unconscionable business practice by misrepresenting the amount of the debt allegedly owed by Brown.

134.    M&T violated the CFA by unlawfully converting Brown's personal property, such as items stored inside the motorboat and the motorboat's engine.

135.    M&T violated the CFA by damaging Brown's personal property, his driveway.

**WHEREFORE**, Brown, on behalf of himself and those similarly situated, respectfully prays for relief as follows:

A.    For an order certifying this matter as a class action pursuant to <u>Rule</u> 23(b)(2), providing notice to the members of the Class, and appointing Brown as the Class Representative and Brown's attorneys as Class Counsel;

B.    For a declaratory judgment that M&T violated the NJUCC, CFA, and TCCWNA;

C.    For injunctive relief prohibiting M&T from carrying out future violations of the NJUCC, CFA, and TCCWNA that are similar to the violations alleged herein;

D.    For injunctive relief prohibiting M&T, or its successors in interest, from obtaining or attempting to obtain additional deficiency judgments from members of the Class;

E.    For an accounting of all amounts charged to Brown and the members of the class related to the application of their payments and any fees charged;

F.    For an accounting of all amounts obtained from the sale of the collateral vehicles of Brown and the members of the class;

G.    Certification of the Class, as defined herein, for monetary relief pursuant to <u>Rule</u> 23(b)(3);

H.    For actual damages;

I.    For compensatory damages;

J.    For a refund of all monies collect via an unlawful act pursuant to N.J.S.A. 56:8-2.11;

K.    For maximum statutory damages pursuant the TCCWNA, NJUCC, including damages under N.J.S.A. 12A:9-625(e) and 626, and all other applicable statutes;

L.    For maximum damages pursuant to the CFA;

M.    For reasonable attorneys' fees and costs of suit in connection with this action pursuant to CFA and all other applicable statutes;

N.    For pre-judgment and post-judgment interest;

O.    For such other and further relief as the Court deems equitable and just.

## <u>JURY DEMAND</u>

Brown demands a trial by jury on all issues subject to trial by jury.

Dated: June 20, 2023                Respectfully Submitted:


                                    */s/Javier L. Merino*
                                    **THE DANN LAW FIRM, PC**
                                    Javier L. Merino, Esq. (NJ Attorney ID No. 078112014)
                                    Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
                                    1520 U. S. Highway 130, Suite 101
                                    North Brunswick, NJ 08902
                                    Tel: (732) 545-7900
                                    Fax: (216) 373-0536
                                    jmerino@dannlaw.com
                                    awolf@dannlaw.com

                                    *Counsel for the Plaintiff Lance Brown*
                                    *and those similarly situated.*